## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

| | |
|---|---|
| SAHLBERG FARMS LLC, on behalf of itself and all others similarly situated,<br><br>          Plaintiff,<br><br>vs.<br><br>BELL BANK,<br><br>          Defendant. | Civil Case No. _____<br><br><br>**CLASS ACTION COMPLAINT**<br>**JURY TRIAL DEMANDED** |

Plaintiff Sahlberg Farms LLC ("Plaintiff"), on behalf of itself and all persons similarly situated, alleges the following based on personal knowledge as to allegations regarding itself and on information and belief as to others.

## NATURE OF THE ACTION

1.      Plaintiff brings this action on behalf of itself and a class of all similarly situated consumers against Defendant Bell Bank ("Bell Bank" or "Defendant"), arising from Bell Bank's routine practice of charging two or more fees ("Multiple Fees"), including overdraft fees ("OD Fees") and non-sufficient funds fees ("NSF Fees"), on a single item.

2.      This practice breaches contractual promises and violates the covenant of good faith and fair dealing.

3.      Plaintiff's account with Bell Bank is governed by the Account Documents which permit Bell Bank to impose fees and address the policies at issue in this Complaint.

4.      Plaintiff does not dispute Bell Bank's right to either (a) reject a transaction and charge a single NSF Fee or (b) pay a transaction and charge a single OD Fee on a transaction that actually overdraws the account, but Bell Bank unlawfully maximizes its already profitable

account fees with deceptive practices that also violate its contract.

5.      Specifically, Bell Bank unlawfully assesses *multiple* fees on a single Automated Clearing House ("ACH") transaction or check.

6.      In Bell Bank's sole and undisclosed view, each time the Bank processes an ACH transaction or check for payment after a having been rejected for insufficient funds, it becomes a new, unique item or transaction that is subject to another fee. But Bell Bank's Account Documents never even hint that this counterintuitive result could be possible.

7.      Bell Bank's Account Documents indicate that only a single fee will be charged for overdrafts (including both NSF Fees and OD Fees) "created by check, in-person withdrawals, ATM withdrawals, or other electronic means," however many times the request for payment is reprocessed. An electronic item reprocessed after an initial return for insufficient funds cannot and does not fairly become a new, unique item for fee assessment purposes.

8.      Bell Bank breaches its contract when it charges more than one fee on the same item, since the contract states—and reasonable consumers understand—that the same item can only incur a single fee.

9.      Bell Bank also breaches its duty of good faith and fair dealing when it charges multiple fees on a single transaction. Specifically, Bell Bank abuses its contractual discretion by (a) processing transactions when it knows full well that a customer's account lacks sufficient funds and (b) charging fees upon each reprocessing of the same item.

10.     Plaintiff and other Bell Bank customers have been injured by these practices. On behalf of itself and the Classes, Plaintiff seeks damages, restitution and injunctive relief.

11.     Bell Bank's improper scheme to extract funds from accountholders already struggling to make ends meet has victimized Plaintiff and thousands of other accountholders.

**PARTIES**

12.     Plaintiff Sahlberg Farms is a citizen and resident of Clay County, Minnesota, and holds a Bell Bank checking account.

13.     Defendant Bell Bank is engaged in the business of providing retail banking services to consumers, including Plaintiff and members of the putative Classes and maintains its principal place of business in Fargo, North Dakota. Bell Bank has over $4.5 billion in assets and provides banking services to customers through bank branches in Minnesota, and North Dakota.

**JURISDICTION & VENUE**

14.     This Court has original jurisdiction of this action under the Class Action Fairness Act of 2005. Pursuant to 28 U.S.C. §§ 1332(d)(2) and (6), this Court has original jurisdiction because (1) the proposed classes are comprised of at least 100 members; (2) proposed class members reside in at least two states, meaning at least one member of the proposed classes resides outside of Minnesota; and (3) the aggregate claims of the putative class members exceed $5 million, exclusive of interest and costs.

15.     Venue is proper in this district pursuant to 28 U.S.C. § 1391 because Bell Bank is subject to personal jurisdiction here and regularly conducts business in this District, and because a substantial part of the events or omissions giving rise to the claims asserted herein occurred in this district.

I.     **BELL BANK CHARGES TWO OR MORE FEES ON THE SAME ITEM**

16.     As alleged more fully herein, Bell Bank's Account Documents allow it to take certain steps when a Bank accountholder attempts a transaction but does not have sufficient funds to cover it. Specifically, Bell Bank may (a) authorize the transaction and charge a *single* OD Fee;

or (b) reject the transaction and charge a *single* NSF Fee.

17.     In contrast to its Account Documents, however, Bell Bank regularly assesses two or more fees on the *same* item or transaction.

18.     This abusive practice is not universal in the financial services industry.  Indeed, major banks like Chase—the largest consumer bank in the country—do not undertake the practice of charging more than one fee on the same item when it is reprocessed.  Instead, Chase charges one fee even if a transaction is reprocessed for payment multiple times.

19.     Bell Bank's Account Documents never disclose this practice. To the contrary, Bell Bank's Account Documents indicate it will only charge a single fee on an item or per transaction.

**A. Plaintiff's Experience**

20.     As an example, on July 9, 2018, Plaintiff attempted to make a one-time AMEX EPAYMENT, via an ACH transaction.

21.     Bell Bank rejected payment of that item due to insufficient funds and charged Plaintiff a $30 Fee.

22.     Unbeknownst to Plaintiff and without its request to Bell Bank to retry the transaction, three days later, on July 12, 2018, Bell Bank processed the same item again, and again rejected the transaction and again charged Plaintiff a $30 NSF Fee. Then, *again* unbeknownst to Plaintiff and without its request to Bell Bank to retry the transaction, five days later, on July 17, 2018, Bell Bank processed the same item a third time, and again rejected the transaction and again charged Plaintiff a $30 NSF Fee.

23.     In sum, *Bell Bank charged Plaintiff $90 in fees to process a single payment* to AMEX EPAYMENT in three separate incidents.

24.     Plaintiff understood the transaction to be a single transaction, an understanding

consistent with what it is laid out in Bell Bank's Account Documents, capable at most of receiving

a single NSF Fee (if Bell Bank returned it) or OD Fee (if Bell Bank paid it).

25.     Bell Bank itself also understood the AMEX EPAYMENT transaction to be a single

transaction, and its systems categorized it as such by designating the reprocessed transaction as a

"RETRY PMT."

**B. The Imposition of Multiple Fees on a Single Transaction Violates Bell Bank's Express Promises and Representations**

26.     The Account Documents provides the general terms of Plaintiff's relationship with

Bell Bank and makes explicit promises and representations regarding how transactions will be

processed, as well as when NSF Fees and OD Fees may be assessed.

27.     The Account Documents contain explicit terms indicating that OD Fees and NSF

Fees will only be assessed once per transaction or item, when in fact Bell Bank regularly charges

two or more fees per transaction or item even though a customer only requested the payment or

transfer once.

28.     Bell Bank's Terms and Conditions, attached hereto as ***Exhibit A***, indicate that a

singular fee can be assessed on checks, ACH debits, and electronic payments, more specifically

stating:

> If [a] transaction is presented for payment in an amount greater than the funds left after the deduction of the temporary hold amount, that transaction will be a nonsufficient funds (NSF) transaction if we do not pay it or an overdraft transaction if we do pay it. You will be charged ***an NSF or overdraft fee*** according to our NSF or overdraft fee policy. You will be charged ***the fee*** even if you would have had sufficient funds in your account if the amount of the hold had been equal to the amount of your purchase.

Ex. A at 3-4 (emphasis added)                    .

29.     Bell Bank's Account Documents clearly state that only a singular ***fee*** per item or

transaction that is returned due to insufficient funds.

30.     According to the Electronic Transfer Fund Document, attached hereto as ***Exhibit B***: Bell Bank "will charge you for ***each transaction*** that overdraws your account," which can be reasonably interpreted to mean that Bell Bank will charge you at most a single fee per item or transaction for which there are insufficient funds. Ex. B at 1 (emphasis added).  Now

31.     The same check, ACH debit, debit card transaction or ATM withdrawal on an account cannot conceivably become a new one each time it is rejected for payment then reprocessed, especially when—as here—Plaintiff took no action to resubmit them.

32.     Likewise, the "Fee Schedule", attached as Exhibit C, reinforces this commonsense understanding:

> For overdrafts created by check, in-person withdrawals, ATM withdrawals, or other electronic means, the following fees apply:
> - Overdraft Item Charge $33
> - Returned Item Charge $33

33.     Based on the above, a customer would expect to be charged either an NSF Fee (called "Returned Item Charge" here) or an OD Fee (called "Overdraft Item Charge" here), but certainly not both, and absolutely not multiple NSF Fees or OD Fees.

34.     There is zero indication anywhere in the Account Documents that the same item is eligible to incur Multiple Fees.

35.     Even if Bell Bank reprocesses an instruction for payment, it is still the same item. Bell Bank's reprocessing is simply another attempt to effectuate an accountholder's original order or instruction.

36.     The disclosures described above never discuss a circumstance where Bell Bank may assess multiple fees for a single check or ACH transaction that was returned for insufficient funds and later reprocessed one or more times and returned again.

37.     In sum, Bell Bank promises that one fee will be assessed per electronic payment or

check, and these terms must mean all iterations of the same instruction for payment. As such, Bell Bank breached the contract when it charged more than one fee per item.

38.     Taken together, the representations and omissions identified above convey to customers that all submissions for payment of the same transaction will be treated as the same item, which Bell Bank will either authorize (resulting in an overdraft item) or reject (resulting in a returned item) when it decides there are insufficient funds in the account. Nowhere does Bell Bank disclose that it will treat each reprocessing of a check or ACH payment as a separate item, subject to additional fees, nor do Bell Bank customers ever agree to such fees.

39.     Customers reasonably understand, based on the language of the Account Documents, that Bell Bank's reprocessing of checks or ACH payments are simply additional attempts to complete the original order or instruction for payment, and as such, will not trigger fees. In other words, it is always the same item or transaction.

40.     Banks and credit unions like Bell Bank that employ this abusive practice know how to plainly and clearly disclose it. Indeed, other banks and credit unions that do engage in this abusive practice disclose it expressly to their accountholders—something Bell Bank here never did.

41.     For example, First Citizens Bank, a major institution in the Carolinas, engages in the same abusive practice as Bell Bank, but at least expressly states:

> Because we may charge a service fee for an NSF item each time it is presented, **we may charge you more than one service fee for any given item**. All fees are charged during evening posting. When we charge a fee for NSF items, the charge reduces the available balance in your account and may put your account into (or further into) overdraft.

(emphasis added).

42.     First Hawaiian Bank engages in the same abusive practices as Defendant, but at

least currently discloses it in its online banking agreement, in all capital letters, as follows:

> YOU AGREE THAT MULTIPLE ATTEMPTS MAY BE MADE TO SUBMIT A RETURNED ITEM FOR PAYMENT AND THAT **MULTIPLE FEES MAY BE CHARGED TO YOU AS A RESULT OF A RETURNED ITEM AND RESUBMISSION**.

(emphasis added).

43.     Klein Bank similarly states in its online banking agreement:

> [W]e will charge you an NSF/Overdraft Fee each time: (1) a Bill Payment (electronic or check) is submitted to us for payment from your Bill Payment Account when, at the time of posting, your Bill Payment Account is overdrawn, would be overdrawn if we paid the item (whether or not we in fact pay it) or does not have sufficient available funds; or (2) we return, reverse, or decline to pay an item for any other reason authorized by the terms and conditions governing your Bill Payment Account. We will charge an NSF/Overdraft Fee as provided in this section regardless of the number of times an item is submitted or resubmitted to us for payment, and regardless of whether we pay the item or return, reverse, or decline to pay the bill payment.

44.     Bell Bank provides no such disclosure, and in so doing, deceives its accountholders.

**C.  The Imposition of Multiple Fees on a Single Transaction Breaches Bell Bank's Duty of Good Faith and Fair Dealing**

45.     Parties to a contract are required not only to adhere to the express conditions in the contract, but also to act in good faith when they are invested with a discretionary power over the other party. In such circumstances, the party with discretion is required to exercise that power and discretion in good faith. This creates an implied promise to act in accordance with the parties' reasonable expectations and means that Bell Bank is prohibited from exercising its discretion to enrich itself and gouge its customers. Indeed, Bell Bank has a duty to honor transaction requests in a way that is fair to Plaintiff and its other customers and is prohibited from exercising its discretion to pile on ever greater penalties on the depositor. Here—in the adhesion agreements Bell Bank foisted on Plaintiff and its other customers—Bell Bank has provided itself numerous discretionary powers affecting customers' Bank accounts. But instead of exercising that discretion

in good faith and consistent with consumers' reasonable expectations, Bell Bank abuses that discretion to take money out of consumers' account without their permission and contrary to their reasonable expectations that they will not be charged multiple fees for the same transaction.

46.     Bell Bank exercises its discretion in its own favor—and to the prejudice of Plaintiff and its other customers—when it reprocesses a transaction when it knows a customer's account lacks funds and then charges additional fees on a single item. Further, Bell Bank abuses the power it has over customers and their Bank accounts and acts contrary to Plaintiff's reasonable expectations under the Account Documents. This is a breach of Bell Bank's implied covenant to engage in fair dealing and act in good faith.

47.     Further, Bell Bank maintains complete discretion not to assess fees on transactions at all. By exercising its discretion in its own favor—and to the prejudice of Plaintiff and other customers—by charging more than one fee on a single item, Bell Bank breaches the reasonable expectation of Plaintiff and other customers and in doing so violates the implied covenant to act in good faith.

48.     It was bad faith and totally outside Plaintiff's reasonable expectations for Bell Bank to use its discretion to assess two or three fees for a single attempted payment.

49.     When Bell Bank charges multiple fees, Bell Bank uses its discretion to define the meaning of a transaction in an unreasonable way that violates common sense and reasonable consumer expectations.  Bell Bank uses its contractual discretion to set the meaning of those terms to choose a meaning that directly causes more fees.

## CLASS ALLEGATIONS

50.     Plaintiff brings this action on behalf of itself and all others similarly situated pursuant to Federal Rule of Civil Procedure 23.

51.    The proposed "Class" is defined as:

All Bell Bank checking account holders in who, in the State of Minnesota, during the applicable statute of limitations, were charged Multiple Fees on a single transaction (the "Minnesota Class"); and

All Bell Bank checking account holders, nationally, who during the applicable statute of limitations, were charged Multiple Fees on a single transaction (the "Nationwide" Class).

52.    Plaintiff reserves the right to modify or amend the definition of the proposed Classes before the Court determines whether certification is appropriate.

53.    Specifically excluded from the Classes are any entities in which Bell Bank has a controlling interest, or which have a controlling interest in Bell Bank, Bell Bank's legal representatives, assigns, and successors, any Judge to whom this action is assigned, and any member of such Judge's staff and immediate family.

54.    The questions here are ones of common or general interest such that there is a well defined community of interest among the members of the Classes. These questions predominate over questions that may affect only individual class members because Bell Bank has acted on grounds generally applicable to the Classes. Such common legal or factual questions include, but are not limited to:

a.    Whether Bell Bank violated contract provisions by charging multiple fees on the same transaction;

b.    Whether Bell Bank breached its covenant of good faith and fair dealing with Plaintiff and other Class members through its Multiple Fee policy and practice;

c.    The proper method or methods by which to measure damages;

d.    The declaratory and injunctive relief to which the Classes are entitled.

55.     The parties are so numerous such that joinder is impracticable. Upon information and belief, and subject to class discovery, the Classes consist of thousands of members or more, the identities of whom are within the exclusive knowledge of and can be ascertained only by resorting to Bell Bank's records. Bell Bank has the administrative capability through its computer systems and other records to identify all members of the Classes, and such specific information is not otherwise available to Plaintiff.

56.     It is impracticable to bring members of the Classes' individual claims before the Court. Class treatment permits a large number of similarly situated persons or entities to prosecute their common claims in a single forum simultaneously, efficiently and without the unnecessary duplication of evidence, effort, expense, or the possibility of inconsistent or contradictory judgments that numerous individual actions would engender. The benefits of the class mechanism, including providing injured persons or entities with a method for obtaining redress on claims that might not be practicable to pursue individually, substantially outweigh any difficulties that may arise in the management of this class action.

57.     Plaintiff's claims are typical of the claims of the other members of the Classes in that they arise out of the same wrongful business practices by Bell Bank, as described herein.

58.     Plaintiff is more than an adequate representative of the Classes in that Plaintiff has a Bell Bank checking account and has suffered damages as a result of Bell Bank's contract violations, Bell Bank's violations of the covenant of good faith and fair dealing, and Bell Bank's unjust enrichment. In addition:

> a.  Plaintiff is committed to the vigorous prosecution of this action on behalf of itself and all others similarly situated and has retained competent counsel experienced in the prosecution of class actions and, in particular, class actions on behalf of consumers against financial institutions;

11

b. There is no conflict of interest between Plaintiff and the unnamed members of the Classes;

c. Plaintiff anticipates no difficulty in the management of this litigation as a class action; and

d. Plaintiff's legal counsel has the financial and legal resources to meet the substantial costs and legal issues associated with this type of litigation.

59. Plaintiff knows of no difficulty to be encountered in the maintenance of this action that would preclude its maintenance as a class action.

60. Bell Bank has acted or refused to act on grounds generally applicable to each of the Classes, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to each of the Classes as a whole.

61. All conditions precedent to bringing this action have been satisfied and/or waived.

<u>COUNT I</u>
**Breach of Contract and Breach of the Covenant of Good Faith and Fair Dealing**
**(On Behalf of Plaintiff and the Classes)**

62. Plaintiff realleges and incorporates by reference all the foregoing allegations as if they were fully set forth herein.

63. Plaintiff and Bell Bank have contracted for Bank services, as embodied in Bell Bank's Account Documents and related documentation.

64. All contracts entered by Plaintiff and the Classes are identical or substantively identical because Bell Bank's form contracts were used uniformly.

65. Bell Bank has breached the express terms of its own agreements as described herein when it assessed multiple fees on the same item.

66. Under the law of the state of Minnesota, good faith is an element of every contract. All contracts impose upon each party a duty of good faith and fair dealing. Good faith and fair dealing, in connection with executing contracts and discharging performance and other duties

according to their terms, means preserving the spirit – not merely the letter – of the bargain. Put differently, the parties to a contract are mutually obligated to comply with the substance of their contract in addition to its form. Evading the spirit of the bargain and abusing the power to specify terms constitute examples of bad faith in the performance of contracts.

67. Subterfuge and evasion violate the obligation of good faith in performance even when an actor believes their conduct to be justified. Bad faith may be overt or may consist of inaction, and fair dealing may require more than honesty. Examples of bad faith are evasion of the spirit of the bargain, willful rendering of imperfect performance, abuse of a power to specify terms, and interference with or failure to cooperate in the other party's performance.

68. Bell Bank abused the discretion it granted to itself when it assessed multiple fees on the same item.

69. In this and other ways Bell Bank violated good faith and fair dealing.

70. Bell Bank willfully engaged in the foregoing conduct for the purpose of (1) gaining unwarranted contractual and legal advantages; and (2) unfairly and unconscionably maximizing revenue from Plaintiff and other members of the Classes.

71. Plaintiff and members of the Classes have performed all, or substantially all, of the obligations imposed on them under the contracts.

72. Plaintiff and members of the Classes have sustained damages as a result of Bell Bank's breaches of the parties' contracts and breaches of contract through violations of the covenant of good faith and fair dealing.

**COUNT II**
**Violation of Minnesota Deceptive Trade Practices Act, Minn. Stat. § 325D.44, *et. seq.***
**(On Behalf of Plaintiff and the Minnesota Class)**

73. Plaintiff incorporates by reference each of the allegations set forth in the preceding

paragraphs.

74.     This claim is asserted on behalf of the members of the Minnesota Class under

Minnesota Deceptive Trade Practices Act, Minn. Stat. § 325D.44, *et. seq.*

75.     The Minnesota Deceptive Trade Practices Act declares that engaging in "conduct

which . . . creates a likelihood of confusion or of misunderstanding," constitutes a deceptive trade

practice Minn. Stat. § 325D.44.

76.     Bell Bank engaged in deceptive acts and practices relating to the imposition of fees,

in violation of Minn. Stat. § 325D.44.   Specifically, Bell Bank misrepresents its practice of

charging multiple fees in its Account Documents.

77.     Defendant engaged in such acts and omissions intending that Plaintiff and the

Minnesota Class would rely on their misrepresentations and omissions.

78.     Plaintiff and the Minnesota Class relied on Defendant's misrepresentations and

omissions to their detriment.

79.     Defendant knew that their trade practices were deceptive and willfully,

intentionally, and/or negligently engaged in them.

80.     Bell Bank's acts and practices proximately caused injury to Plaintiff and the

Minnesota Class, and they are entitled to, inter alia, damages, injunctive, and declaratory relief.

<u>**COUNT III**</u>
<u>**Violation of Minnesota Consumer Fraud Act, Minn. Stat. § 325F.68, *et. seq.***</u>
**(On Behalf of Plaintiff and the Minnesota Class)**

81.     Plaintiff incorporates by reference each of the allegations set forth in the preceding

paragraphs.

82.     This claim is asserted on behalf of the members of the Minnesota Class under the

Minnesota Consumer Fraud Act, Minn. Stat. § 325F.68, *et. seq.*

83.     The Minnesota Consumer Fraud Act defines "Person" to mean "any natural person or a legal representative, partnership, corporation . . . ." Minn. Stat. § 325F.68.

84.     The Minnesota Consumer Fraud Act defines "Merchandise" to mean "any objects, wares, goods, commodities, intangibles, real estate, loans, or *services*." Minn. Stat. § 325F.68.

85.     The Minnesota Consumer Fraud Act provides that "[t]he act, use, or employment by any person of any fraud, false pretense, false promise, misrepresentation, misleading statement or deceptive practice, with the intent that others rely thereon in connection with the sale of any merchandise . . . is enjoinable. . . ." Minn. Stat. § 325F.69.

86.     Bell Bank engaged in unfair and deceptive acts and practices relating to the imposition of Fees, in violation of Minn. Stat. § 325F.69.  Specifically, Bell Bank misrepresents its practice of charging multiple fees in its Account Documents.

87.     Bell Bank's acts and practices proximately caused injury to Plaintiff and the Minnesota Class, and they are entitled to, inter alia, injunctive, and declaratory relief.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, individually and on behalf of the members of the Classes, respectfully requests the Court to enter an Order:

a.     certifying the proposed Classes;

b.     declaring Bell Bank's Fee policies and practices alleged in this Complaint to be wrongful, unfair and unconscionable;

c.     awarding all OD Fees and NSF Fees paid to Bell Bank by Plaintiff and the Classes, as a result of the wrongs alleged herein, in an amount to be determined at trial;

d.     awarding actual damages in an amount according to proof;

e.     statutory damages;

f.      awarding pre-judgment and post-judgment interest at the maximum rate permitted

by applicable law;

g.      awarding costs and disbursements assessed by Plaintiff in connection with this

action, including reasonable attorneys' fees pursuant to applicable law; and

h.      awarding such other relief as this Court deems just and proper.

**DEMAND FOR JURY TRIAL**

Plaintiff and all others similarly situated hereby demand trial by jury on all issues in this

complaint that are so triable as a matter of right.

Dated:  April 2, 2020                          Respectfully submitted,

*/s/ Timothy J. Becker*
Timothy J. Becker (MN Bar No. 0256663)
Jennell K. Shannon (MN Bar No. 0398672)
Jacob R. Rusch (MN Bar No. 0391862)
**JOHNSON BECKER PLLC**
444 Cedar Street, Suite 1800
St. Paul, MN 55101
(612) 436-1800 (phone)
(612) 436-4801 (fax)
tbecker@johnsonbecker.com
jshannon@johnsonbecker.com
jrusch@johnsonbecker.com

Jeffrey D. Kaliel (*pro hac vice* to be filed)
Sophia Gold (*pro hac vice* to be filed)
**KALIEL PLLC**
1875 Connecticut Ave., NW, 10th Floor
Washington, D.C. 20009
(202) 350-4783
jkaliel@kalielpllc.com
sgold@kalielpllc.com

Jeff Ostrow (*pro hac vice* to be filed)
Jonathan M. Streisfeld (*pro hac vice* to be filed)
Daniel Tropin (*pro hac vice* to be filed)
**KOPELOWITZ OSTROW FERGUSON
WEISELBERG GILBERT**
One W. Las Olas Blvd., Suite 500
Fort Lauderdale, Florida 33301

16

Telephone No. (954) 525-4100
Facsimile No. (954) 525-4300
ostrow@kolawyers.com
streisfeld@kolawyers.com
tropin@kolawyers.com

*Attorneys for Plaintiff and the Putative Classes*